## COMMISSIONER OF INTERNAL REVENUE v. BRONSON et al.

Circuit Court of Appeals, Eighth Circuit.
March 25, 1929.

No. 8165.

Morton P. Fisher, Sp. Asst. to Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., C. M. Charest, General Counsel, Bureau of Internal Revenue, and Irwin R. Blaisdell, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellant.

Francis D. Butler, of St. Paul, Minn. (Doherty, Rumble, Bunn & Butler, of St. Paul, Minn., on the brief), for appellees.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge. This is a petition for review of an order of the Board of Tax Appeals redetermining the deficiency in the federal estate tax of the estate of C. N. Nelson, deceased. The Commissioner of Internal Revenue found a deficiency in the tax of $12,328.75. The Board of Tax Appeals redetermined the deficiency to be $3,928.75. The difference in amount is the tax attributable to $60,000 deductions which are claimed from the value of the gross estate. The deductions were disallowed by the Commissioner, but were allowed by the Board of Tax Appeals.

The character of the claimed deductions will appear from the following undisputed facts found by the Board of Tax Appeals. On or about August 9, 1917, C. N. Nelson transferred practically all of his property, consisting of 10,000 shares of stock in C. N. Nelson, Inc., of the approximate value of $3,000,000, to the two appellees herein and one other person, as trustees. The trust deed provided for the care of the trust estate; distribution of the income to Nelson during his life, and to certain named persons thereafter; and final disposition of the corpus of the estate upon the death of the last of certain named persons. The trustees were authorized to sell and to reinvest the proceeds. The trust deed reserved to Nelson power to alter or revoke the trust deed at will. Coincident with the execution of the trust deed, Nelson executed his last will, and incorporated the trust deed therein. The provisions in the will for the disposition of the property covered by the trust deed were the same as in that instrument. The same three parties who were named as trustees in the deed of trust were named as executors in the will. Three amendments were made to the deed of trust on October 15, 1917, December 23, 1919 (re-executed May 10, 1920), and June 17, 1921, respectively; and on the same dates codicils to the will were executed for the purpose of incorporating therein the amendments to the deed of trust. On June 22, 1920, also, an amendment was made to the deed of trust. It contained the following provision:

"Now, Therefore, I, the said Charles N. Nelson, do hereby revoke the appointment of

the said Robert S. Davis, James D. Bronson and George H. Prince, as trustees of said trusts, and do hereby nominate and appoint Bankers Trust Company of New York, of the State of New York, sole trustee of said trusts, to hold said office until my death. Upon my death, the said Bankers Trust Company shall cease to hold the office of trustee, and I hereby nominate and appoint the said Robert S. Davis, James D. Bronson and George H. Prince as trustees of said trusts from and after the date of my death. The property now forming the said trust estate shall be forthwith transferred by the present trustees to the new trustee herein named, and, upon my death, the new trustee or its successors shall forthwith transfer the trust estate to said Robert S. Davis, James D. Bronson and George H. Prince, their survivor or survivors, successor or successors, as the case may be, as Trustees."

Nelson died May 24, 1923. The three trustees came into immediate possession of the trust estate, amounting approximately to $3,000,000. Although the same three parties were named as executors in the will, they decided not to probate the will. As trustees, they proceeded to marshal the assets of the estate, to determine and pay debts and charges. They inventoried and valued the estate, which was a complicated proceeding. They prepared federal income, and federal estate tax returns, and New York transfer tax returns, and paid such taxes. One of the trustees, in order to fulfill his duties as such, was obliged to rearrange his personal business affairs for the period of a year. The three trustees performed the above-mentioned services and such other services as were required under the trust deed and will within a period of two years after the death of Nelson. They allowed and paid themselves as compensation $10,000 each, or a total of $30,000. These amounts were a reasonable compensation. They also allowed and paid for services of attorneys employed by them in the aforementioned matters the sum of $30,000. This amount constituted reasonable fees. These amounts were paid May 19, 1924. Thereafter the three trustees continued to hold the trust estate, and received $500 per annum each as compensation.

On these findings the Board of Tax Appeals held in its decision promulgated May 27, 1927, that the two items of $30,000, making a total of $60,000, were properly deductible from the value of the gross estate in determining the value of the net estate for the purpose of the federal estate tax.

The correctness of this holding is the question involved in the present petition for review.

The Revenue Act of 1921, §§ 401 and 403 (42 Stat. 277, 279), so far as here material, read as follows:

"Sec. 401. That, in lieu of the tax imposed by Title IV of the Revenue Act of 1918, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act, whether a resident or nonresident of the United States. * * *"

"Sec. 403. That for the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except, in the case of a resident decedent, where such property is not situated in the United States), losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty, or from theft, when such losses are not compensated for by insurance or otherwise, and such amounts reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or any estate, succession, legacy, or inheritance taxes. * * *"

The position of appellant is that the amounts in question were not allowable as deductions from the value of the gross estate, because the "administration expenses" mentioned in section 403 are limited to those attendant upon the settlement of an estate by the legal representative, and that the expenses here in question were not incurred by a legal representative, inasmuch as the will of C. N. Nelson was never probated, and no executors thereof were appointed by any probate court. In support of this position appellant relies upon Regulations of the Treasury Department, No. 63, article 35—Administration Expenses—reading as follows:

"The amounts deductible from the gross estate as 'administration expenses' are such expenses as are actually and necessarily in-

curred in the administration of the estate; that is, in the collection of assets, payment of debts, and distribution among the persons entitled. The expenses contemplated in the law are such only as attend the settlement of an estate by the legal representative preliminary to the transfer of the property to individual beneficiaries or to a trustee, whether such trustee is the executor or some other person. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. Administration expenses include (1) executor's commissions; (2) attorney's fees; (3) miscellaneous expenses. Each of these classes is considered separately."

Appellant also relies upon the following language in the case of Dodd v. Anderson, 197 N. Y. 466, 470, 90 N. E. 1137, 1138 (27 L. R. A. [N. S.] 336, 18 Ann. Cas. 738):

"1. There can be no executor where there is no will. 2. Unless a will is admitted to probate there can be no letters testamentary. 3. Until letters testamentary or of administration are issued upon the estate of a decedent there is no legal representative of the estate. 4. Although a person is nominated as executor in a paper purporting to be a will, he is under no legal obligation to accept."

The rulings in Dodd v. Anderson have, in our opinion, no application to the present case. In that case a volunteer sought to have a purported will established, and himself appointed executor. The purported will was rejected. The volunteer sought compensation for his efforts in trying to establish the will. His claim was denied. The court held that administration expenses did not include expenses and compensation in trying to establish an invalid will.

The Board of Tax Appeals, in commenting on article 35, Regulations 63, above quoted, said:

"We think that in so far as this regulation undertakes to restrict the allowance of administration expenses to those items which have been fixed and awarded by a decree of a proper court, it is a too narrow construction of the Act and should not be followed."

We are inclined to agree with this criticism. The language of section 403 (a)(1) of the Revenue Act of 1921 is broad, and we think should receive a fairly liberal construction. It was the evident purpose of Congress that the gross estate should have deducted from it numerous, ordinary charges and expenses incident to the administration and settlement of the estate. The items are not specifically named; the amounts are not specifically fixed, nor are they left to be determined by any named court, but are to be as the provision reads, "Such amounts * * * as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered." The words "within or without the United States" are significant as recognizing that the estate might be administered anywhere in the world, even in countries where administration of estates is had otherwise than through courts, if any such countries exist. Furthermore, the Revenue Act of 1921 itself expressly recognizes that estates may be "administered" within the meaning of the act and a return made for the purpose of the federal estate tax and deductions allowed under section 403, all without any proceedings in a probate court or other court of like jurisdiction. We say this because in section 400 of the act (42 Stat. 277) the term "executor" includes (where there is no executor or administrator) "any person in actual or constructive possession of any property of the decedent." By sections 404, 405, 406, 407 (42 Stat. 281), the possibility is recognized that the estate may be "administered" by an "executor" of the broad definition, a return made by such executor, deductions allowed to him, payment of the estate tax by him, and a receipt for the tax given to him. All of these sections, when read in connection with section 403(a)(1), show that the words "administration expenses" are used in a broad sense, and are not limited to such expenses as shall be allowed by a probate court or other court of like jurisdiction.

It is urged by appellant that the construction of section 403(a)(1) of the Revenue Act of 1921, as set forth in Treasury Regulations 63, article 35, and now contended for, has received recognition and approval by Congress in the following way: That Congress has re-enacted without material change the provisions contained in section 403(a)(1) of the Revenue Act of 1921 in the later Revenue Acts of 1924, § 303(a)(1), 43 Stat. 305, and 1926, § 303(a)(1); 26 USCA § 1095(a)(1), and that no change was made by the Revenue Act of 1928; 26 USCA § 2001 et seq.; that during all this time Treasury Regulations 63, article 35, or its exact equivalent, had been promulgated and was in effect; that Congress has thus given implied sanction to the construction adopted by the Treasury Department.

The force of this argument drawn from departmental construction is greatly weakened, if not entirely destroyed, by the fact that the Board of Tax Appeals placed its construction upon section 403(a)(1) in the instant case on May 27, 1927. A year later, on May 29, 1928, Congress, with a presumed knowledge of such decision of the Board of Tax Appeals, passed the Revenue Act of 1928, but did not see fit to change the wording of section 303(a)(1) of the Revenue Act of 1926, formerly section 403(a)(1) of the Revenue Act of 1921. Congress has thus, so it might be argued, sanctioned and approved the construction of the statute adopted by the Board of Tax Appeals.

Furthermore, it has been held by the Board of Tax Appeals in numerous cases, beginning with Appeal of Samuel E. A. Stern et al., Executors, 2 B. T. A. 102, decided June 19, 1925, that administration expenses, such as executor's commissions, are deductible under section 403(a)(1) of the Revenue Act of 1921 and similar provisions in revenue acts of other years, before they have been paid or allowed by any order of court, provided such administration expenses are reasonably allowable by the laws of the jurisdiction. See, also, Appeal of Henry Riffel, 3 B. T. A. 436; Estate of Jacob Voelbel, 7 B. T. A. 276. All of these cases were decided prior to the passage of the Revenue Act of 1928, yet Congress did not see fit to alter the wording of the provision relative to deductions of administration expenses.

Our conclusion is that the construction placed upon section 403(a)(1) of the Revenue Act of 1921 by the Board of Tax Appeals in the instant case was correct.

With this construction of the statute in mind we turn again to the facts in the present case. The services performed by the trustees were such as are usually performed by an executor or administrator. The acts of the trustees were necessary and valid and authorized by the deed of trust. The attorneys were employed by the trustees to aid in performance of these usual and necessary acts. The sums paid to the trustees and to the attorneys were reasonable in amount.

Section 222 of the New York Surrogate's Court Act provides:

"An executor, administrator, guardian or testamentary trustee may pay from the funds or estate in his hands from time to time, as shall be necessary, his legal and proper expenses of administration necessarily incurred by him, including the reasonable expense of obtaining and continuing his bond and the reasonable counsel fees necessarily incurred in the administration of the estate. Such expenses and disbursements shall be set forth in his account when filed, and settled by the surrogate."

Section 281 of the same act provides:

"Upon the disposition of real property of a decedent, as prescribed in this act, the executor or administrator disposing of the property, must be allowed by the surrogate out of the proceeds of the sale brought into court, his commissions and expenses; and such a further sum as the surrogate thinks reasonable, for the necessary services of his attorney and counsel therein."

Section 285 of the same act provides for commissions to be paid to executors on a sliding scale according to the size of the estate, viz.: 5 per cent. on first $2,000; 2½ per cent. on next $20,000; 1½ per cent. on next $28,000; 2 per cent. on all above $50,000. "The value of any real or personal property, to be determined in such manner as the surrogate may direct, and the increment thereof, received, distributed or delivered shall be considered as money in making the computation of commissions. But this shall not apply in case of a specific legacy or devise. * * * If the gross value of the principal of the estate or fund accounted for amounts to $100,000 or more, each executor, administrator, or guardian or testamentary trustee is entitled to the full compensation on principal and income allowed herein to a sole executor. * * *"

It is thus conclusively established that administration expenses in the settlement of estates are allowed by the statute of the state of New York, and it is also apparent that, if the scale of allowances to executors were applied to the estate in the case at bar, the result would be sums largely in excess of those paid by the trustees to themselves.

It is suggested by appellant that the trustees have included in the services for which they paid themselves the making of an inventory and a valuation of the property of C. N. Nelson, Inc.; and that this service was no part of the duties of executors of the estate of C. N. Nelson. This suggestion overlooks the provisions of section 404 of the Revenue Act of 1921, which imposes upon executors the duty of making a return under oath, setting forth the value of the gross estate, the deductions under section 403, the value of the net estate, and the amount of tax payable thereon.

Clearly, in determining the value of the 10,000 shares of stock in C. N. Nelson, Inc.,

it was highly proper to make an inventory and a valuation of the stocks and other property owned by that corporation. The trustees came within the definition of executors as given in section 400 of the Revenue Act of 1921, and it was accordingly their duty to make the return, and to take the usual steps to insure reasonable correctness in the return.

Our conclusion of the whole case is that the items in question were administration expenses and were properly deductible in determining the value of the net estate.

The petition to review is denied, and the order of the Board of Tax Appeals is affirmed.