Elroy N. Clark and City Bank Farmers Trust Company, as Trustees Under Two Trust Agreements Dated March 24, 1932 and April 11, 1932, Respectively, Made by Charles W. Waterman, Now Deceased, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 81301. Promulgated February 25, 1943.

*George Craven, Esq.*, for the petitioners.
*Allen T. Akin, Esq.*, for the respondent.

OPINION.

Disney, *Judge:* This proceeding involves estate tax liability, a deficiency in which was determined in the amount of $17,514.64. All facts were stipulated, and we adopt as our findings of fact those set forth in such stipulation. The Federal estate tax return was filed with the collector at Denver, Colorado. The questions presented are as to whether the Commissioner erred in the reduction of deductions for charitable transfers, attorneys' fees, and trustees' commissions.

In summary, the facts involved are: That Charles W. Waterman died in 1932, leaving, in addition to property jointly owned with his wife and not here involved, no property of any consequence, except that held in trust in two revocable trusts established by him during his lifetime, having at the date of decedent's death a total value of $1,384,605.88; that each of the trusts provided for payment of the income to the trustor for his life, then to the trustor's wife for her life, thereafter the remainder (aside from another provision not here

involved) to go to the University of Vermont; that it is agreed that the value of the two trusts was includible in gross estate, and that the provision for the remaindermen is charitable; that no executors were appointed, the trustees having administered the affairs of the estate and having filed this proceeding as those in possession of the estate; that the trustor's wife, the life beneficiary under the trusts, died in 1939; that the petitioners have since the trustor's death, paid from trust funds attorneys' fees of $16,079.38 for services in connection with Colorado inheritance tax and Federal estate tax proceedings and claim deduction thereof, where as deduction of only $12,-885.50 out of the $16,079.38 has been allowed by the Commissioner; that other attorneys' fees were incurred, consisting of $13,939.39 for services in connection with the first accounting of the trustees, after the trustor's death, settled by judgment on May 12, 1937, and $7,-048.53 for attorneys' services in connection with second and final trustees' accounting after the death of the decedent's wife, settled by judgment on May 17, 1940; that deduction of both of said amounts has been disallowed by the Commissioner; that the Commissioner allowed deduction from gross estate of the sum of $6,535, trustees' commissions for receiving trust principal and $7,511.58 for receiving trust principal, but disallowed items of $433.40 and $397.87 for paying out principal, and also disallowed deduction of $33,303.84 trustees' commissions for paying out trust principal and $5,284.24 for receiving principal based upon increase in value; that an agreement executed at the same time as the trust instruments provided for commissions to the trustees, of one percent of market value of principal received, and one percent of market value of principal paid out; and that inheritance taxes of $157,140.24 were paid to the State of Colorado.

The Commissioner allowed a deduction from gross estate for the value of the remainder of the trust estate after expiration of the life estate of the decedent's wife, but reduced the deduction by the amount of the state inheritance taxes, $157,140.24 (as stipulated), and by the net Federal estate tax of $31,303.98, debts and funeral expenses; and the petitioner urges error.

We will consider the points in the above order.

With reference first to Federal estate taxes and state inheritance taxes, the petitioners' position is this: That the first sentence of section 303 (a) (3) of the Revenue Act of 1926, as amended,[1] permits the

---

[1] SEC. 303. For the purpose of the tax the value of the net estate shall be determined—
(a) In the case of a resident, by deducting from the value of the gross estate—
  \*     \*     \*     \*     \*     \*     \*
(3) The amount of all bequests, legacies, devises, or transfers, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or

deduction from gross estate of the amount of "all bequests, legacies, devises or *transfers*" (for charitable uses, as to which no question is here raised), that we have here a transfer *inter vivos*, and that the reduction of such amounts by the amount of Federal estate tax or state inheritance tax, as determined by the Commissioner, under the latter part of the same section, providing such reduction of "bequests, legacies, or devises," is not proper, for the latter expression, providing for the reduction, does not mention *transfers*, which the section has already permitted to be deducted from gross estate. The respondent contends that transfers are, like bequests, legacies and devises, included both in the provision for deduction and the provision for reduction by estate and inheritance taxes, within proper interpretation of the section and the intention of Congress.

The petitioner relies in large degree upon *Edwards* v. *Slocum*, 264 U. S. 61, as authority for the position that in the absence of a statute requiring the deduction for charity to be reduced by taxes payable therefrom, the Commissioner's action here must be disapproved. We find two reasons, however, for hesitation in giving to that decision the effect petitioner urges. First, it was decided prior to the present statute and interpreted one which merely provided a tax upon net estate, ascertained after deduction of charities, and held in substance that the amount of the tax may not be included in the net estate. The statute there involved contained no language with reference to reduction of deduction for charities, by the amount of taxes, so did not present the instant problem of interpretation. Secondly, the statute here presented for analysis was first passed in 1924, and "as a legislative reversal of the decision in that case," i. e., *Edwards* v. *Slocum*, as is recited in the Congressional Committee Reports upon the Revenue Act of 1932, at which time the original provision, repealed in 1926, was reinstated. We consider, therefore, that our question requires more light than is cast upon it by the decision cited.

The gist of the petitioner's idea here is that though section 303 (a) (3) particularly allowed deduction of *inter vivos* transfers to charities, yet in providing for reduction, by the amount of estate

animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. If the tax imposed by section 301, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this paragraph, then the amount deductible under this paragraph shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes. The amount of the deduction under this paragraph for any transfer shall not exceed the value of the transferred property required to be included in the gross estate; * * *

and inheritance taxes, of deductions for charities, the language specially covered only bequests, legacies, and devises, leaving "transfers" by such *inter vivos* trusts as here appear, deductible in full. In other words, the petitioner puts "transfers" in a wholly different category from devises, bequests, and legacies. Is this treatment justified, in view of the fact that the value of *inter vivos* trusts, revocable as here, is included in gross estate? Can such transfers by *inter vivos* trusts become a part of the gross estate as to which tax is laid and from which deductions for charity are allowed, and remain unaffected by the body of the law as to estate tax? One of the grounds upon which the inclusion of property within such transfers in gross estate has been justified is that of "substitute for testamentary disposition." *Milliken* v. *United States*, 283 U. S. 15; *United States* v. *Wells*, 283 U. S. 102, 117. *Heiner* v. *Donnan*, 285 U. S. 312, says: "The transfer is considered to be testamentary in effect," and Mr. Justice Stone, dissenting, used the expressions "taxed as a part of the decedent's estate" and "their taxation as though made at death, as an adjunct to the estate tax." In *Nichols* v. *Coolidge*, 274 U. S. 531, we read:

Undoubtedly, Congress may require that property subsequently transferred in contemplation of death be treated as part of the estate for purposes of taxation. * * *

If, however, we are thus to regard the revocable *inter vivos* transfer as a part of the transferor's estate, and as testamentary disposition, we can make no effective distinction between *inter vivos* transfers and those by way of legacy, devise, or bequest. Logic, under the above authority, requires that all alike be considered species of transfer. This is indicated by the closing sentence of section 303 (a) (3), reading:

* * * The amount of the deduction under this paragraph for any transfer shall not exceed the value of the transferred property required to be included in the gross estate. * * *

Under such language deduction for charity must be limited to the value of property transferred to charity, whether by *inter vivos* transfer, devise, bequest, or legacy. We consider that the sentence was by no means directed only to *inter vivos* transfers, for the illogic of allowing deduction of more than value transferred applies alike to any conveyance to charity, whether testamentary or otherwise. This being true, there is reason for using the words transfer, devise, bequest, and legacy as in *pari materia*, and therefore of applying the reduction-by-taxes idea to all deductions allowed therefor, in case they are to charity. Obviously, for that purpose at least, the words "transfer" and "transferred property" apply to devises, bequests, and legacies; and in our opinion this indicates that all were intended to

be treated alike in the matter of taxes-reduction of deductions. That such was the legislative intent is disclosed in the House Committee Report (No. 708, 72d Cong., 1st sess.) upon section 807, Revenue Act of 1932, reading in part as follows:

The Supreme Court on February 18, 1924, in the case of *Edwards* v. *Slocum* (264 U. S., 61), held that, as a matter of construction, a residuary gift to charity was not to be reduced by the Federal estate tax which was imposed on so much of the estate as the testatrix had bequeathed to individuals. Under the State law the estate tax was payable generally out of the estate and so fell upon and reduced the residuary estate given to charity. As a legislative reversal of the decision in that case, the sentence referred to was incorporated in the Revenue Act of 1924 and covered Federal estate taxes as well as State inheritance taxes where, either by the terms of the will or by the local law, any such tax operated to reduce *the amount given to and received by charity.* * * * [Italics supplied.]

The phrase "amount given to and received by charity" is general. It is not limited to devises, legacies, or bequests. In this language we discern intent to construe the language in the Act of 1924 as applying to any amount devoted to charity, irrespective of the form in which "given to and received" by such charity; and to reapply that intendment by the Revenue Act of 1932. Such intent and such view are truly consistent with the expressions from the Supreme Court regarding certain *inter vivos* transfers, such as here involved, as substitutes for testamentary disposition, for if such tranfers are regarded as testamentary in character, they necessarily partake of the nature of bequests, legacies, or devises—the only means of transferring by will. So construing section 303 (a) (3) of the Revenue Act of 1926, as amended, we conclude and hold that the deduction for transfers to charity here involved should be reduced by the amount of Federal estate taxes and state inheritance taxes paid.

The next question is whether the respondent erred in disallowing the deduction from gross estate of certain trustees' commissions and attorneys' fees. He allowed attorneys' fees incurred in connection with Colorado inheritance tax and Federal estate tax proceedings, but disallowed those incurred for services in connection with first accountings of the trustees, following the death of the decedent, settled by judgment of court in 1937, and those incurred for the same class of services, settled by judgment of court in 1940. He allowed trustees' commissions on principal received (except upon increase in value) and denied deduction of commission upon principal paid out. The commissions on trust principal received were paid prior to decedent's death; those for paying out principal, after decedent's death. A written agreement executed at the time of creation of the trusts entitled the trustees to commissions of one percent of principal paid out,

and of one percent of market value of trust principal received, to be deducted from the first income received; and the commissions were paid under order of the New York court. Nothing in the record shows a right in the trustees to receive commissions on increase in value of trust estate, and we disallow such commissions, amounting to $5,284.24. The commissions paid under order of court for paying out principal are, in our opinion, proper deductions from gross estate. The amount of the commissions was based upon the value of property to be paid out at the end of the trust, which actually terminated some seven years after the demise of the trustor, but such commissions were clearly a charge against the trust corpus, enforceable by the trustees, under contract, and reducing the amount eventually to be realized by the trust. Though in *Central Hanover Bank & Trust Co.* v. *Commissioner*, 118 Fed. (2d) 270, cited by the respondent, deduction from gross estate of trustees' commissions based upon value of corpus was denied on the ground that such value was "too problematical to justify a deduction of their present worth," in that case the commissions had not been paid at the time of trial, whereas here the amounts actually paid are now known, prior to collection of estate tax, and we think that no element of problematical values remains. In *Estate of George S. Fiske*, 45 B. T. A. 52, we held that trustees' commissions constituting, as here, one percent of the value of trust corpus distributed, were properly deducted from gross estate though not paid until more than one year after the death. In *Commissioner* v. *Davis*, 132 Fed. (2d) 644, the Circuit Court affirmed. We hold that the trustees' commissions were deductible from gross estate.

With respect to attorneys' fees for services in connection with trustees' accountings after decedent's death: These being for service in connection with trustees' accountings, in our opinion they were, like the trustees' commissions, necessary charges against the estate at the date of death. *Estate of Frederic E. Baldwin*, 44 B. T. A. 900, relied on by the respondent, involved attorneys' fees for controversies arising after the death; here the trustees must necessarily file accounting, in order to pass the estate. The deduction of the attorneys' fees from gross estate is allowed.

The petitioner urges that since $750 for funeral expenses and $6,820.51 for debts of decedent were paid from funds other than the trust funds, the Commissioner should not have reduced the charitable deduction to that extent. The respondent does not advert to the question. We sustain the petitioner on this point.

*Decision will be entered under Rule 50.*